APPROVED FOR PUBLIC FILING BY THE CSO

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ABDENNOUR SAMEUR**, <br><br> *Petitioner*, <br><br> v. <br><br> **GEORGE W. BUSH**, *et al.*, <br><br> *Respondents*. | Misc. No. 08-444 (TFH) <br><br> Civil Action No. 05-1806 (CKK) |

## STATUS REPORT

This petition for habeas corpus was filed September 12, 2005. On October 19, 2005, the Court applied the protective order and supplemental orders issued by Judge Green to this case, then stayed the case pending resolution of *Boumediene v. Bush*.

On December 19, 2007, Petitioner Abdennour Sameur was released from Guantánamo Bay and returned to the United Kingdom, where he currently resides.

On June 19, 2008, Judge Kollar-Kotelly noted this transfer and ordered Petitioner to show cause by July 18 as to why the case should not be dismissed. Judge Kollar-Kotelly further ordered that should no response be received, on July 19, 2008, the case shall stand dismissed with prejudice.

Mr. Sameur opposes such a dismissal at this time.

**This Case Is Not Moot Despite Transfer from Guantánamo Bay Due to Continuing Collateral Consequences**

Mr. Sameur is a UNHCR-recognized refugee from Algeria. Before his seizure in Pakistan in December 2001 and his imprisonment in Guantánamo, Mr. Sameur was a legal

permanent resident of the United Kingdom. However, since Mr. Sameur returned to the United Kingdom in December, the British government has refused to restore Mr. Sameur's permanent residency status due to security concerns. These concerns stem directly from Mr. Sameur's having been labeled an enemy combatant and incarcerated by Respondents. As a result, despite his refugee status, Mr. Sameur potentially may now be deported to Algeria, where he fears for his life. Furthermore, due to his lack of official residency, Mr. Sameur is not permitted to work or receive government benefits, such as housing assistance or income support. He has no income whatsoever and shares a one-room apartment not much bigger than a Guantánamo cell with his brother.

These collateral consequences mean that his case is not moot. *See, e.g., Fiswick v. United States*, 329 U.S. 211, 221-222 (U.S. 1946) (holding alien's habeas petition not moot after release as conviction rendered petitioner liable to deportation and denial of naturalization); *Carafas v. Lavallee*, 391 U.S. 234, 238 (U.S. 1968) (holding habeas petition is not moot post-release due to collateral consequences such as bar to engaging in certain businesses). If Mr. Sameur prevails in his habeas litigation, the 'enemy combatant' designation will be lifted, and presumably, the UK's security concerns with it. He would then have a real chance to put his life back together in a safe place—a chance that, over half a year after his homecoming from Guantánamo, he is still awaiting. Petitioner objects to dismissal and seeks a chance to clear his name in a habeas hearing.

## Proposed Schedule

### Filing of Return

The government has not yet filed a return in this action. Petitioner asks the Court to order the government to file its return as soon as possible, but no later than the dates set in Judge Hogan's order of July 11, 2008. He asks further that the government be required to

APPROVED FOR PUBLIC FILING BY THE CSO

seek leave should it wish to include information beyond that presented at Mr. Sameur's 2004 Combatant Status Review Tribunal. That is the evidence the government contended before Judge Green on August 31, 2004, would "supply the complete factual record justifying" the conclusion that a prisoner was an enemy combatant. The government should not be allowed to try to come up with reasons to justify imprisonment retroactively; the issue is whether there was authorization to detain the Petitioner at the time he entered US custody. The government should have the entire CSRT record already compiled and in its possession.

### Exculpatory Information

While the government's authority to *detain* Mr. Sameur turns on facts available at the time Mr. Sameur was taken into custody, the government's obligation to demonstrate that it did not imprison an innocent man continues up to today, particularly given the serious collateral consequences Mr. Sameur faces. Thus, at the same date it files its return, the government should provide counsel with any exculpatory information the government may possess, classified or unclassified, no matter when it was acquired.

### No Redaction Should Be Permitted

Respondents should be ordered to produce all evidence in unredacted form to allow counsel to properly evaluate the nature of the evidence. Petitioners' counsel has Secret clearance (and as necessary will request Top-Secret clearance) and has access to the secure facility. Accordingly there is no need for the government to redact any information in this case. Should the government desire to redact information, Petitioner requests that the Court order the Government to move the Court for express permission to redact said information, providing the Court with the specific reasons the proposed redactions are necessary.

### Filing of Traverse

Petitioner proposes the Court order Mr. Sameur's counsel to examine the return and any exculpatory information at the secure facility in place for Guantanamo cases within three

APPROVED FOR PUBLIC FILING BY THE CSO

weeks of the government's making it available there. (Counsel will attempt to get there within less time, but the complications of traveling from London make us reluctant to propose a shorter period for an order, at least not until we know the date the evidence will be available to us.)

After viewing the government's evidence, counsel will return to England and discuss matters with Mr. Sameur (pursuant to classification restrictions). Petitioner proposes filing either a traverse or a notice that he does not intend to file one within two weeks of returning from Washington to the United Kingdom.

### Subsequent Status Reports

Petitioner proposes that one week after that filing, the parties be required to submit status reports setting forth their proposals for further proceedings. He suggests this course in line with the principle that habeas corpus proceedings are flexible and are to be tailored to the particulars of the case. *See Roberts v. Reilly*, 116 U.S. 80, 93, 6 S.Ct. 291, 29 L.Ed. 544 (1885) ("[T]he summary character of proceedings under the writ of habeas corpus [is] not admitting, in favor of the liberty of the citizen, the delays usually and necessarily attending ordinary litigations [but] confers upon … the judge … discretion to [employ] such regulations and orders as may seem best adapted to secure the speediest and most effective justice").

### Discovery

Petitioner does not ask the Court to adopt a discovery plan at this point; rather, he proposes that should there be a need for discovery, he will file an appropriate motion.

///

**APPROVED FOR PUBLIC FILING BY THE CSO**

July 14, 2008                              Respectfully Submitted,

_____
Zachary Katznelson (California Bar No. 209489)
Cori Crider (Member New York Bar)
Reprieve
PO Box 52742
London EC4P 4WS
United Kingdom
011 44 207 353 4640 (tel)
011 44 207 353 4641 (fax)
zachary@reprieve.org.uk
cori@reprieve.org.uk

*Counsel for Petitioner*

**APPROVED FOR PUBLIC FILING BY THE CSO**

**CERTIFICATE OF SERVICE**

I hereby certify that I have caused a copy to be served upon counsel for Respondents by filing this document directly on ECF, pursuant to approval by the Court Security Office.

Dated:  July 14, 2008                           _____